**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, INC., | |
| Plaintiff, | NO. 3:04-CV-2640 |
| v. | (JUDGE CAPUTO) |
| TIMOTHY J. MITCHELL, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is the Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (Doc. 19.) For the reasons set forth below, Plaintiff's motion will be denied. The Court has jurisdiction over this matter due to diversity jurisdiction, 28 U.S.C. § 1332[1], and additionally under 28 U.S.C. § 2201 *et seq.* (the Federal Declaratory Judgment Act).

## BACKGROUND

This action arises from the shooting death of Michael F. Walter by Joseph Stacy on July 5, 2002, in Port Jervis, New York. Mr. Stacy had earlier been accused of sexually and/or indecently assaulting two of Mr. Walter's daughters, and the murder was seemingly in retaliation for Mr. Walter's participation in eliciting a confession from Mr. Stacy thereto. This confession–which was made to Michael Walter and Defendant

---

[1] Because this Court is sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Timothy Mitchell separately–was elicited at the Walter home on August 16, 2001.  More detailed facts of this exchange will not be described here, but may be discovered by reference to the underlying action, *Walter v. Pike County*, No. 03-1690.

On September 25, 2003, the decedent's widow Susan L. Walter filed a complaint–in her individual capacity, as administratrix of her husband's estate, and as parent and guardian of her minor children (hereinafter referred to as "the Underlying Plaintiffs")–against Pike County, Westfall Township, its police department, Timothy J. Mitchell, Pike County District Attorney's office, and several Pike County District Attorneys (hereinafter referred to as the "Underlying Defendants").  On October 30, 2003, Underlying Plaintiffs filed a First Amended Complaint with this Court (hereinafter referred to as the "Underlying Action").  *Walter v. Pike County*, No. 03-1690, Doc. 6.  Claims from the Underlying Action that survived Underlying Defendants' motions to dismiss include, *inter alia*, claims for violations of substantive and procedural due process for failing to provide police protection–which Underlying Plaintiffs claim right to under the "state-created danger" doctrine–to the Walter family following Michael Walter's participation in eliciting a confession from Joseph Stacy on August 16, 2001.

Selective Insurance Co., the Plaintiff in the present action, issued an insurance policy to Westfall Township that contained liability insurance coverage through policy number S 1673241 ("the Selective Policy") for the effective dates June 1, 2002 to June 1, 2003.  At its inception, the Selective Policy provided Commercial General Liability Coverage ("CGL Coverage") and Commercial Umbrella Coverage ("Umbrella Coverage").  The Selective Policy was amended, effective July 1, 2002, to include Public Official Liability Coverage and Police Professional Liability Coverage ("PPL Coverage").  From

June 1, 2002, the inception date of the Selective Policy, and for the entire duration of Westfall Township's coverage by the Selective Policy, Defendant Mitchell was employed by the Pike County District Attorney's office as a Detective.  (Doc. 20, p. 3.)  He had previously been the Chief of Police for Westfall Township, but was not an employee of the Township at any point during the Selective Policy coverage period.  (Doc. 25, p. 5.)

Defendant Mitchell has demanded a defense and indemnity from Selective Insurance Co. with respect to the Underlying Action.  Plaintiff has denied coverage alleging that they have no duty to defend or indemnify Mitchell in the Underlying Action because he was not an agent or employee of Westfall Township, the insured, at the time of Mr. Walter's murder.

Plaintiff has thus sought a declaratory statement from this Court to the effect that they have no duty to defend or indemnify Timothy Mitchell with respect to the Underlying Action.  The Plaintiff filed the present motion for summary judgment with the Court on May 31, 2006.  (Doc. 19.)  This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

**A.    Summary Judgment**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable

3

substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case...."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co*., 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in

4

the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.     Interpretation of Insurance Contracts**

The interpretation of an insurance contract is a question of law for the court to decide. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997) (citing *Standard Venetian Blind v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 657 A.2d 1252, 1255 (Pa. Super. 1995).

A court must give effect to the plain language of the insurance contract read in its entirety. *Reliance*, 121 F.3d at 901. When the language of an insurance policy is ambiguous, the provision must be construed in favor of the insured. *Reliance*, 121 F.3d at 900-01 (citing *Standard Venetian Blind Co.*, 469 A.2d at 566). Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning. *Bowersox v. Progressive Cas. Ins. Co.*, 781 A.2d 1236, 1239 (Pa. Super. 2001) (citing *Hutchinson v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1985)). However, the language of an insurance policy may not be stretched beyond its plain meaning to create an ambiguity. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

The insured has the initial burden of establishing coverage under the policy. *Butterfield v. Giuntoli*, 670 A.2d 646, 651-52 (Pa. Super. 1995).  On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies.  *Mistick, Inc. v. Northwestern Nat. Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. 2002).  The insurer can sustain its burden only by establishing the exclusion's applicability by uncontradicted facts in the record.  *Butterfield*, 670 A.2d at 651-52.  Policy exclusions are strictly construed against the insurer.  *Selko v. Home Ins. Co.*, 139 F.3d 146, 152 n. 3 (3d Cir. 1998) (citing *Standard Venetian Blind*, 469 A.2d at 566).

**C.     Insurer's Duty to Defend**

An insurance carrier's duty to defend is distinct from its duty to provide coverage. It is interpreted more broadly than the duty to indemnify.  *Britamco Underwriters, Inc. V. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994).  An insurer may have a duty to defend even though it may have no duty to indemnify.  *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).  A duty to indemnify does not arise until the insured is found liable for a covered claim.  *Id*.

An insurer is obligated to defend the insured against any suit arising under the policy "even if the suit is groundless, false, or fraudulent."  *Britamico*, 636 A.2d at 651 (quoting *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321 (Pa. 1963)). Consequently, whenever a complaint filed against the insured could potentially come within the policy's coverage, the insurer's duty to defend is triggered.  *Belser v. Rockwood Cas. Inc. Co.*, 791 A.2d 1216, 1219, 1222 (Pa. Super 2002); *Phico Ins. Co. V.*

*Presbyterian Med. Servs. Corp.*, 663 A.2d 753, 755 (Pa. Super 1995).  If a single claim in a complaint containing multiple claims is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim.  *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.  Because the duty to defend is broader than the duty to indemnify, the complaint must be construed liberally, the factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured.  *Roman Mosaic & Tile Co.* v. Aetna Cas. & Sur. Co., 704 A.2d 665, 669 (Pa. Super. 1997).  To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief.  *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).  In other words, it is the substance of the allegations–and not their form–that is the focus of the coverage inquiry.

## DISCUSSION

Plaintiff insurer brings a declaratory judgment action seeking determination that it has no duty to defend or indemnify Defendant Timothy J. Mitchell in the Underlying Action because Mr. Mitchell was not an employee of the insured, Westfall Township, on the date of the murder of Michael Walter.  Applying the above-stated principles to the current case, the Court will examine the Selective Policy, and the allegations of–and facts developed in–the Underlying Action to determine, as a matter of law, if the Selective Policy covers Defendant Mitchell for his actions as Chief of Police of Westfall Township prior to the first effective date of the Selective Policy.

The following language and definitions in the Selective Policy–particularly, the PPL Coverage section–are pertinent to the Court's analysis of coverage thereunder:

"This insurance applies only to "bodily injury" and "property damage" which occurs during the policy period.  The "bodily injury" and "property damage" must be caused by an "occurrence" and arise out of performance of the insured's law enforcement duties..."  (Doc. 21-3 at 59.)

"This insurance does not apply to ... claims or suits for damages arising out of the willful violation of any federal, state or local statute, ordinance, rule or regulation committed by or with the knowledge or consent of any insured."  *(Id.* at 59-60) (internal quotation marks omitted).

""Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*Id.* at 65.)

""Occurrence" means an event, including continuous or repeated exposure to substantially the same general harmful conditions, which results in "bodily injury", "personal injury", or "property damage" by any person or organization and arising out of the insured's law enforcement duties."  (*Id.* at 66.)

It is clear to the Court that the Selective Policy qualifies as an "occurrence policy."[2] Further, the only event that could be considered an "occurrence" that arose "out of performance of the insured's law enforcement duties" and that resulted in a "bodily injury", as those terms are defined and/or utilized in the Selective Policy, was the death of Michael Walter on July 5, 2002 as a result of him being shot by Joseph Stacy. It is undisputed that this date falls within the effective dates of the Selective Policy, which was amended on July 1, 2002 to include the PPL Coverage.

The general rule is that an occurrence is determined by the cause or causes of the resulting injury. *Appalachian*, 676 F.2d at 61. The Court finds convincing evidence that the single proximate cause which resulted in the bodily injury here, *i.e.* the shooting death of Michael Walter, was his participation in eliciting a confession from Mr. Stacy, which was at minimum tacitly allowed by Defendant Mitchell. Whether or not the state-created danger doctrine thereafter created a property right in police protection to the Walter family is yet to be determined in the Underlying Action. Additionally, the Court does not believe that Defendant Mitchell acted willfully in violating any statute, ordinance, rule, or regulation in a manner that would prompt the exclusionary clause from the PPL Coverage section quoted above.

The Court further finds no relevance in Mr. Mitchell's current employment status.

---

[2] The United States Court of Appeals for the Third Circuit defines an "occurrence policy" as an insurance policy where the "insured is indemnified for acts or occurrences which take place within the policy period." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 59 (3d Cir. 1982). This is to be contrasted with a "claims made policy" where the "insured is indemnified for 'claims made' during the policy period regardless of when the acts giving rise to those claims occurred." *Id.* Under an occurrence policy, a determination as to whether the occurrence took place during the period of coverage is "made by reference to the time when the injurious effects of the occurrence took place." *Id.* at 61-62. That is to say, the moment in time when the event produced personal injury is deemed the time of the occurrence. *Id.* at 62.

9

Although the plain language of the Selective Policy would suggest that Mr. Mitchell is not an "employee" of the insured (Westfall Township) as that term is utilized therein, the Court finds that a genuine ambiguity exists when the language of the policy is examined in the manner in which occurrence-based policies have been construed by the Third Circuit Court of Appeals.  Occurrence policies look to the time of the injurious effect, and then to the underlying cause or causes of the event that produces said injury.  It is the status of a party seeking defense and indemnification coverage under an occurrence policy (at the moment that these underlying cause or causes transpire) that dictates whether that party can establish the requisite relationship vis-à-vis the insured to warrant such coverage.  Applying this reasoning to the present action, the Court finds controlling Defendant Mitchell's status as Chief of Police of Westfall Township at the time of the transpiration of the underlying cause–*i.e.*, the events of August 16, 2001–of the later "occurrence" (the shooting death of Michael Walter).  Further, the Court does not believe that construing the Selective Policy in this fashion would necessitate the stretching of the language of the Policy beyond its plain meaning to create an ambiguity where none genuinely exists.  *Madison Constr. Co.*, 735 A.2d at 106.  By virtue of the manner in which the Third Circuit Court of Appeals has construed occurrence policies, the Court is of the opinion that the relevant language of the Selective Policy is reasonably susceptible to more than one construction and meaning, and therefore can fairly be considered ambiguous.  *Bowersox*, 781 A.2d at 1239.  Therefore, the Court finds that, as a matter of law, the Selective Policy should be extended to cover Defendant Mitchell for his actions as then Chief of Police of Defendant Westfall Township, due to the fact that the "occurrence" that resulted from said actions fell within the effective coverage period of the

Selective Policy.

For the above stated reasons, Plaintiff Selective Insurance Co. has a duty to defend Defendant Timothy J. Mitchell–and consequently indemnify him if he is held liable–in the Underlying Action. Accordingly, Plaintiff's motion for summary judgment in their declaratory judgment action will be denied.

## CONCLUSION

For the above stated reasons, the Court will hold as a matter of law that Plaintiff Selective Insurance Co. has a duty to defend–and potentially indemnify–Defendant Timothy J. Mitchell in the Underlying Action. Accordingly, Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c)–as to their declaratory judgment action–will be denied. An appropriate Order will follow.


Date: October 19, 2006               /s/ A. Richard Caputo
                                     A. Richard Caputo
                                     United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, INC., | |
| Plaintiff, | NO. 3:04-CV-2640 |
| v. | (JUDGE CAPUTO) |
| TIMOTHY J. MITCHELL, et al., | |
| Defendants. | |

## ORDER

**NOW**, this ___19th___ day of October, 2006, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c) (Doc. 19) is **DENIED**.

2. Plaintiff shall defend Defendant Timothy J. Mitchell in the Underlying Action, *Walter v. Pike County*, No. 03-1690, and will be required to indemnify him therein should he be held liable in said action.

        /s/ A. Richard Caputo
       A. Richard Caputo
       United States District Judge